# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| MICHAEL PRESTON, | CASE NO. 1:22-CV-01976 |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN HAROLD MAY, | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner Michael Preston ("Mr. Preston" or "Petitioner") filed the pending habeas

corpus petition under 28 U.S.C. § 2254 on October 26, 2022, asserting three grounds for relief

that challenge his convictions and aggregate prison term of twenty-three years to life in

Cuyahoga County Court of Common Pleas, Case No. CR-18-634913-A, for reckless homicide,

aggravated robbery, murder, and felonious assault.[1]  (ECF Doc. 1 ("Petition"); ECF Doc. 8-1, p.

104.)

The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule

72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 8 & 9.)  For the reasons set forth

herein, the undersigned recommends that the Court **DENY** Ground One, **DISMISS** and/or

**DENY** Ground Two, and **DISMISS** and/or **DENY** Ground Three.

---

[1]  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Preston states he placed the Petition in the prison mailing system on October 26, 2022.  (ECF Doc. 1, p. 24.)  The Petition was docketed on November 2, 2022.  (ECF Doc. 1.)

## I.     Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Court of Appeals summarized the facts underlying Mr. Preston's convictions and sentence as follows:

{¶ 3} In December 2018, Preston was named in a six-count indictment, charging him with aggravated murder in violation of R.C. 2903.01(B) (Count 1); aggravated robbery in violation of R.C. 2911.01(A)(3) (Count 2); murder in violation of R.C. 2903.02(B) (Count 3); felonious assault in violation of R.C. 2903.11(A)(1) (Count 4); attempted murder in violation of R.C. 2923.02 and 2903.01(B) (Count 5); and aggravated robbery in violation of R.C. 2911.01(A)(3) (Count 6). The matter proceeded to a jury trial, where the following facts were adduced.

{¶ 4} On November 15, 2018, Jesus Omar Cruz Maldonado ("Jesus") and his wife, Lesley Cruz DeJesus ("Lesley"), drove to their local church with their children, L.C. and J.C., to prepare for an upcoming birthday party that the family was hosting. They arrived at the church at approximately 1:00 or 2:00 p.m. While the family was inside the church hall, L.C. looked out a window and noticed that there was someone near the family minivan. When Jesus went outside to assess the situation, he confronted two individuals who had entered his vehicle without permission. Jesus testified that he opened the passenger's-side door of his vehicle and attempted to pull one of the occupants out of the vehicle. Ultimately, the individual who was in the passenger's side of the vehicle fled the scene and Jesus turned his attention to the individual located in the front-passenger's seat, later identified as Preston.

{¶ 5} Jesus testified that when he confronted Preston in the front seat, Preston was attempting to start the vehicle with a screwdriver. During the altercation, Lesley was standing behind Jesus and was trying to get him out of the vehicle in order to avoid a dangerous situation. Within seconds, however, Preston successfully started the vehicle and began driving in reverse. Jesus testified that he managed to hold on to the seat while the vehicle traveled in reverse. However, Lesley was unable to hold on to the passenger's-side door. Her body was dragged by the vehicle, leaving her unconscious on the ground. When Preston stopped driving in reverse, Jesus fell out of the vehicle and sustained injuries to his hands, legs, and feet. Preston then put the vehicle in drive and drove over Lesley's body while fleeing the scene. Jesus

2

explained that his wife's body was not blocking the parking lot exit and that there was room for the vehicle to pass by without hitting her. The force of the vehicle caused Lesley to die within seconds.

{¶ 6} When police arrived at the scene, they secured the area, spoke with witnesses, and confirmed that Lesley had succumbed to her injuries. Officer Michael Tracy ("Officer Tracy") of the Cleveland Police Department testified that he was provided a vague description of the two suspects, which was broadcasted to patrol vehicles that were assisting in the area.

{¶ 7} Officer Trevor Majid ("Officer Majid") of the Cleveland Police Department testified that he received the broadcasted description while patrolling the area where the suspects were last seen. Within 15 minutes of the incident, Officer Majid observed a male matching one of the suspect's description. The male, later identified as Devontae Smith ("Smith"), was walking northbound on a roadway located approximately one block south of the church parking lot. He was detained and transported to the homicide unit for further questioning.

{¶ 8} Similarly, Officer Joseph Maund ("Officer Maund") of the Cleveland Police Department testified that he was patrolling the area when he observed a male matching one of the suspect's description. The male, later identified as Kason Robertson ("Robertson"), attempted to flee on foot before he was apprehended in a backyard that was located approximately one quarter mile from the church parking lot. Robertson, who attempted to discard a firearm as he fled, was arrested within minutes of the incident.

{¶ 9} Detective Troy Edge ("Det. Edge") of the Cleveland Police Department testified that he was assigned to document the crime scene. In the course of his investigation, Det. Edge photographed and collected items of evidentiary value that were located at the church parking lot and at the location where Jesus's family vehicle was eventually abandoned by Preston. The evidence was sealed and delivered to a property room before being transported to the medical examiner's office for forensic testing.

{¶ 10} Detective Arthur Echols ("Det. Echols") of the Cleveland Police Department, Homicide Unit, testified that he and his partner, Detective Morris Bruce Vowell ("Det. Vowell"), were assigned to investigate Lesley's death. Det. Echols explained that in the course of the investigation, the homicide detectives "received investigational leads that [identified] Preston as a very strong person of interest." (Tr. 1024.) As a result of this information, Det. Echols created a computer-generated photo array using a law enforcement database. The photo array contained photographs of six men, including Preston, who shared similar physical features and characteristics.

{¶ 11} On November 24, 2018, Det. Echols and a uniformed officer, who was intended to serve as a blind administrator, presented the photo array to Jesus for identification purposes. Upon arriving at the residence where Jesus was staying,

3

however, Det. Echols encountered language barriers that required Jesus's family member to serve as a translator. Thereafter, Jesus identified Preston, marked No. 4, as the assailant in the driver's seat of his vehicle. He also identified a second individual, A.B., as the individual he removed from the passenger's seat of his vehicle. Det. Echols confirmed that his department had no investigational leads to tie A.B. to the crime. Based on Jesus's photo identification and the investigational leads implicating Preston in the crime, a warrant was issued for Preston's arrest on November 26, 2018.

{¶ 12} At trial, Jesus reiterated that the person depicted in photograph No. 4 of the photo array was the person he encountered in the driver's side of his vehicle and the person who ran Lesley over with the vehicle while fleeing the scene. (Tr. 457.) Jesus further identified Preston in court as the assailant. When asked how he was able to recognize Preston, Jesus stated, "[b]ecause the day of the incident, I struggled with him. I saw him." (Tr. 459.)

{¶ 13} During cross-examination, Det. Echols confirmed that Jesus did not conclusively identify Preston as the driver, but "merely stated that [Preston's] photo looked the closest to the person that was driving the van that day." (Tr. 1034.) Thus, Jesus did not express his level of confidence in his identification on the photo array sheet. Det. Echols further admitted that he remained in the room during the identification process and used Jesus's family friend to translate the instructions for the administration of the photo array. Det. Echols, and not the uniformed officer, continued to provide Jesus instructions via the translator throughout the process. Although Det. Echols maintained that he complied with the statutory procedures for photo identifications, the trial court provided the jury with the following instruction regarding the reliability of the eyewitness identification:

> Under Ohio law, all law enforcement agencies that conduct photo lineups must adopt specific procedures for conducting photo lineups that meet certain basic requirements.

> In considering the surrounding circumstances under which a witness has identified the defendant in the photo lineup, you must consider whether the lineup procedures used met these requirements.

> You may consider evidence of noncompliance with these requirements in determining the reliability of the eyewitness identification resulting from or related to this lineup.

> These basic requirements include at a minimum the following:

> > Unless it was not practical, a blind or blinded administrator conducted the lineup.

> > If it was not practical for a blind or blinded administrator to conduct the lineup, the lineup administrator stated in writing the reason for that impracticability.

4

The lineup administrator made a written record that included all the following information:

All identification and non-identification results obtained during the lineup, signed by the eyewitness including the eyewitness' confidence statements made immediately at the time of the identification.

The names of all persons present at the lineup.

The date and time of the lineup.

Any eyewitness identification of one or more fillers in the lineup, and the names of the lineup members, other relevant identifying information, and the sources of all photographs used in the lineup.

The blind administrator who conducted the lineup informed the eyewitness that the suspect may or may not have been in the lineup.

Photo lineup means the identification procedure in which an array of photographs, including a photograph of the suspected perpetrator of an offense and additional photographs of other persons not suspected of the offense, is displayed to an eyewitness for the purpose of determining whether the eyewitness identifies the suspect as the perpetrator of the offense.

Administrator is the person conducting the photo lineup.

Blind administrator or blinded administrator means an administrator who does not know the identity of the suspect.

(Tr. 1422-1425.) *See* R.C. 2933.83(C)(3).

{¶ 14} Det. Vowell testified that he was assigned to investigate Lesley's death. While assessing the crime scene, Det. Vowell learned that two individuals matching the suspects' descriptions were detained by patrolling officers and transported to the homicide unit. Det. Vowell then returned to the homicide unit, where he interviewed Smith and Robertson and collected buccal swabs for DNA forensic testing. Ultimately, the decision was made to release Smith from custody. Robertson, however, was arrested and booked for carrying a concealed weapon. Subsequently, Det. Vowell assisted detectives in collecting evidence from the scene where Jesus's family vehicle was abandoned. The evidence was sealed in separate envelopes and transported to the Cuyahoga County forensic lab. In addition, Det. Vowell submitted a buccal swab that was taken from Preston at the time of his arrest.

{¶ 15} Laura Evans ("Evans"), a forensic DNA analyst with the Cuyahoga County Medical Examiner's Office, testified that she conducted an analysis of the DNA evidence obtained in this matter. Relevant to this appeal, Evans explained that her

office uses a computer software program known as TrueAllele to analyze samples that contain mixtures of DNA. According to Evans, swabs taken from the surface of the screwdriver used to start Jesus's vehicle revealed that it contained a mixture of DNA from five contributors. Evans testified that one of the mixtures was consistent with Preston's DNA. The probability of finding another individual with the same DNA profile was one in 9.21 quintillion unrelated African-Americans, one in 16.9 quintillion unrelated Caucasians, and one in 5.31 quintillion unrelated Hispanics. Evans testified that Preston's DNA also matched DNA profiles found on (1) the surface of a pry tool discovered on the driver's side floor of the vehicle; (2) swabs from the vehicle's steering wheel, gear shift, and interior driver's side door handle; (3) a disposable lighter found on the front driver's seat; and (4) a brick found in the vicinity of the vehicle's center console. Smith's and Robertson's DNA was not discovered on any of the items submitted for forensic testing.

{¶ 16} Forensic pathologist and medical examiner, Dr. Dan Galita ("Dr. Galita"), of the Cuyahoga County Medical Examiner's Office testified that he performed the autopsy of Lesley. Dr. Galita testified that Lesley sustained significant internal injuries as a result of the tremendous pressure applied to her chest and upper abdomen when the wheels of the vehicle passed over her body. Lesley's ribs were crushed, causing her lungs to separate from their vascular connection with her heart and airway. She also sustained significant lacerations to her kidney and liver. Accordingly, Dr. Galita testified, to a reasonable degree of medical certainty, that Lesley's cause of death was "blunt force injuries of head, trunk and extremities with skeletal, visceral and soft tissue injuries." (Tr. 1008.) Furthermore, he stated that her manner of death was a homicide.

{¶ 17} At the conclusion of the state's case, defense counsel made an oral motion for acquittal on all counts pursuant to Crim.R. 29. Following a brief recess, the trial court denied the motion for acquittal, finding "there was sufficient evidence presented to go to the jury to make a determination as to each of these counts." (Tr. 1252.)

{¶ 18} On behalf of the defense, Preston's girlfriend, Lydia John ("Lydia"), testified that on the day of the incident, she and Preston donated blood at the CSL Plasma bank located at West 25th Street in Cleveland, Ohio. Lydia explained that after she finished her shift as a nursing assistant, she met Preston at the plasma bank at approximately 3:45 p.m. Lydia testified that Preston rode his bicycle to the plasma bank and was already in the process of having his vitals checked at the time she had arrived to make her donation. According to Lydia, Preston finished his donation at approximately 6:30 p.m. Thereafter, Lydia and Preston stopped for dinner and were home by 8:00 p.m.

{¶ 19} Lydia's mother, Jennifer John ("Jennifer"), testified that on the day of the incident she was with Preston in Lydia's home after Lydia had left for work. Jennifer testified that Preston stayed inside the home until he left to meet Lydia at the plasma bank. Jennifer estimated that Preston left the home, on his bicycle, between 2:30 and 2:45 p.m.

{¶ 20} Sara Moss ("Moss") is employed as a center manager at CSL Plasma. As reflected in state's exhibit No. 222, CSL Plasma is located 1.1 miles from the church parking lot where Lesley was killed. Relevant to this case, Moss confirmed that Preston made a plasma donation on November 15, 2018. CSL Plasma records reflect that Preston checked into the plasma bank at 3:20 p.m. and began the screening process at 3:57 p.m. Moss testified that the donation process for return donors, such as Preston, "can take anywhere from probably 45 minutes to two hours depending on how many people show up [and] how many staff members are called off." (Tr. 1303.) In this instance, Preston's plasma was withdrawn at 5:42 p.m., at which time Preston was free to leave the building.

{¶ 21} At the conclusion of trial, Preston was found guilty of reckless homicide, a lesser-included offense of the aggravated murder charged in Count 1 of the indictment; aggravated robbery as charged in Count 2 of the indictment; murder as charged in Count 3 of the indictment; felonious assault as charged in Count 4 of the indictment; and aggravated robbery as charged in Count 6 of the indictment. He was found not guilty of attempted aggravated murder as charged in Count 5 of the indictment.

*State of Ohio v. Preston*, 2021-Ohio-2278, ¶¶ 3-21, 2021 WL 2765175, at * 1-5 (Ohio Ct. App. July 1, 2021); (ECF Doc. 8-1, pp. 95-104.)

## II.    Procedural Background

### A.    State Court Conviction

A Cuyahoga County Grand Jury indicted Mr. Preston on December 7, 2018, on one count of aggravated murder (Count 1), two counts of aggravated robbery (Counts 2 & 6), one count of murder (Count 3), one count of felonious assault (Count 4), and one count of attempted aggravated murder (Count 5). (ECF Doc. 8-1, pp. 4-6.) He plead not guilty to the indictment. (*Id*. at p. 7.) The case proceeded to a jury trial on January 6, 2020. (*Id*. at p. 223.) The jury was charged on January 15, 2020, and started its deliberations after closing argument on January 16, 2020. (*Id*. at p. 221.) On January 17, 2020, the jury returned its verdict, finding Mr. Preston guilty of reckless homicide, a lesser included offense of Count 1, aggravated robbery as charged in Counts 2 & 6, murder as charged in Count 3, and felonious assault as charged in Count 4; the jury found Preston not guilty of attempted aggravated murder (Count 5). (*Id*. at pp. 8, 220-21.)

On February 10, 2020, Mr. Preston appeared for sentencing.  (*Id*. at pp. 9-10, 219.)  The trial court found that Counts 1 through 5 merged for purposes of sentencing, and the State elected to proceed on Count 3.   (*Id*.)  The trial court sentenced Mr. Preston to an aggregate prison sentence of 23 years to life, 15 years to life on Count 3 and 8 years on Count 6.  (*Id*.)

**B.      Direct Appeal**

On March 4, 2020, Mr. Preston filed a notice of appeal with the Eighth District Court of Appeals through new appointed counsel.  (ECF Doc. 8-1, pp. 11-20.)  In his appellate brief (*id.* at pp. 51-93), he raised the following assignments of error:

1.      The trial court erred when it denied appellant's motion for acquittal under Crim. R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

2.      Appellant's convictions are against the manifest weight of the evidence.

3.      The trial court erred by denying appellant's request for the lesser included offense jury instruction on Count 4.

4.      The trial court erred by admitting exhibits over defense objection and in violation of Evid. R. 410, 402, and 403 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

5.      Appellant was deprived a fair trial and due process when Det. Echols improperly commented on the credibility of the pretrial identification.

6.      Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

(*id*. at pp. 56, 73-92).  The State of Ohio filed its appellate brief.   (*Id*. at pp. 22-49.)  On July 1, 2021, the Eighth District Court of Appeals overruled Mr. Preston's assignments of error and affirmed his convictions and sentence.  (*Id*. at pp. 94-132.)

On August 16, 2021, Mr. Preston filed a notice of appeal with the Supreme Court of Ohio (*id.* at pp. 133-34) and memorandum in support of jurisdiction (*id.* at pp. 135-90) with the assistance of counsel.  He raised the following propositions of law:

8

1.      A criminal defendant's state and federal constitutional rights are violated when his conviction stands on insufficient evidence.

2.      When the trial court admits gruesome photographs of body parts where there is no dispute over the cause of death, it violates state evidence rules and the state and federal constitutions.

3.      The trial court violates the accused's right to due process and a fair trial when it permits a prosecution witness to comment on the credibility of a pretrial identification process.

(*Id*. at pp. 136, 140-49.)  On October 26, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Preston's appeal.  (*Id*. at p. 191.)

**C.      Delayed Ohio App. R. 26(B) Application to Reopen Appeal**

On February 15, 2022, Mr. Preston filed a pro se application for leave to file a delayed reopening of appeal pursuant to App. R. 26(B)(2)(b) (ECF Doc. 8-1, pp. 195-201) and a motion to exceed page limitations (*id*. at pp. 192-94).  The State filed a memorandum in opposition on February 22, 2022.  (*Id*. at pp. 202-11.)  On March 30, 2022, the appellate court denied Mr. Preston's leave to exceed the page limitations (*id.* at p. 212) and denied his App. R. 26(B) application to reopen (*id.* at pp. 213-17).  Mr. Preston did not file an appeal in the Supreme Court of Ohio.

**D.      Federal Habeas Corpus Petition**

Mr. Preston raises the following three grounds for relief in his Petition:

**Ground One:**    A criminal defendant Michael Preston state and federal constitutional rights are violated when his conviction stands on insufficient evidence.

**Ground Two:**  When the trial court admits gruesome photographs of body parts where there is no dispute over the cause of death, it violates state evidence rules and state and federal constitutions.

**Ground Three**:  The trial court violates the accused's right to due process and a fair trial when it permits a prosecution witness to comment on the credibility of a pre-trial identification process.

9

(ECF Doc. 1, pp. 5-19.)

### III.  Law & Analysis

#### A.  Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**B.      Ground One**

In Ground One, Petitioner argues there was insufficient evidence to convict him of murder, aggravated robbery, or felonious assault.  (ECF Doc. 1, pp. 7-11.)  Respondent argues that Mr. Preston's sufficiency claim should be denied on the merits.  (*Id*. at pp. 23-29.)

**1.      Legal Framework for Sufficiency of Evidence Claims**

A "sufficiency of the evidence" claim is cognizable on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970).  In reviewing such a claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

In determining the sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  This "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal citations, quotations, and alterations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies to questions regarding the sufficiency of the evidence.  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  "First,

11

deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [and] second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained the two-step deferential analysis as follows:

> First, we must ask whether the evidence itself was sufficient to convict under Jackson. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  Thus, even if this Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Consistent with the foregoing framework, the undersigned turns to Mr. Preston's sufficiency of the evidence claim.

### 2.    The Evidence was Sufficient Under *Jackson* to Support the Convictions and the State Court's Adjudication of the Claim was Not Unreasonable

Petitioner argues there was insufficient evidence to convict him of murder, aggravated robbery, or felonious assault.  (ECF Doc. 1, pp. 7-11.)  First, he argues there was insufficient evidence of identity.  (*Id*.)  He claims evidence supports his alibi.  (*Id*. at pp. 8-9.)  He also argues that his convictions were based on unreliable DNA evidence, unreliable identification by Mr. Maldonado, and unreliable and statutorily non-compliant pre-trial photo identification procedures.  (*Id*. at pp. 8-11.)  Second, he argues the State failed to produce evidence to prove he

knowingly inflicted or attempted to inflict serious physical harm on Mr. Maldonado or Ms.

DeJesus, and therefore there was insufficient evidence to sustain the convictions for murder,

aggravated robbery, and felonious assault as charged in Counts 2, 3, 4, and 6. (*Id*. at pp. 11.)  The

undersigned will address each of these arguments in turn.

> ### i.  The Evidence was Sufficient Under *Jackson* to Support a Finding that the Petitioner Was the Perpetrator and the State Court's Adjudication of the Relevant Arguments was Not Unreasonable

On direct appeal, the state court of appeals considering the merits of Mr. Preston's

sufficiency of the evidence claim began by outlining the sufficiency of the evidence standard:

> {¶ 25} Crim.R. 29(A) provides for an acquittal "if the evidence is insufficient to
> sustain a conviction of such offense or offenses." "[T]he test for sufficiency
> requires a determination of whether the prosecution met its burden of production at
> trial." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, 2009
> WL 2186608. "The relevant inquiry is whether, after viewing the evidence in a light
> most favorable to the prosecution, any rational trier of fact could have found the
> essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*,
> 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The state
> may use direct evidence, circumstantial evidence, or both, in order to establish the
> elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991).
> Circumstantial evidence is "proof of facts or circumstances by direct evidence from
> which the trier of fact may reasonably infer other related or connected facts that
> naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-
> Ohio-517, ¶ 32, 2015 WL 628352.

*Preston*, 2021 WL 2765175, at * 5.  Next, the court addressed Mr. Preston's argument that there

was insufficient evidence to establish his identity as the perpetrator, finding the argument to be

without merit for the following reasons:

> {¶ 26} In challenging the sufficiency of the evidence supporting each of his
> convictions, Preston initially argues that there is insufficient evidence of identity.
> Preston reiterates his claims of innocence and contends that his convictions were
> the product of vague identification testimony, questionable DNA evidence, and an
> unreliable photo-array identification.

> {¶ 27} "[I]dentity of the perpetrator is an essential element that must be proved
> beyond a reasonable doubt." *State v. Johnson*, 9th Dist. Lorain No. 13CA010496,
> 2015-Ohio-1689, ¶ 13, 2015 WL 1962863. As with any other element, "[t]he

identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. Deal*, 8th Dist. Cuyahoga No. 92642, 2010-Ohio-153, ¶ 11, 2010 WL 193570, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315; *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082, 2008 WL 4966485.

{¶ 28} Relevant to this appeal, this court has found that "even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 52, 2014 WL 585043, citing *State v. Bryson*, 8th Dist. Cuyahoga No. 98298, 2013-Ohio-934, 2013 WL 1089109. Similarly, DNA evidence identifying a defendant as a major contributor to the DNA profile found on an object linked to a crime is sufficient evidence to sustain a conviction. *State v. Brown*, 8th Dist. Cuyahoga No. 98881, 2013-Ohio-2690, ¶ 31, 35, 2013 WL 3327528 (the evidence was sufficient where the defendant's DNA profile was the major contributor to a sample collected from a shirt connected to the crime, notwithstanding the existence of unidentified minor contributors). *See also State v. Martin*, 11th Dist. Lake No. 2017-L-005, 2019-Ohio-22, ¶ 93, 2019 WL 117870, quoting *State v. Eckard,* 3d Dist. Marion No. 9-15-45, 2016-Ohio-5174, ¶ 33, 2016 WL 4080623 (where the homeowner found a strange crowbar after the police left and the defendant was a major contributor to the DNA found on the crowbar, this was sufficient circumstantial evidence of his identity).

{¶ 29} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational jury could have determined, beyond a reasonable doubt, that Preston was the perpetrator of the crimes committed against Jesus and Lesley. In this case, Jesus testified that he was able to observe the face of the person who was sitting in the driver's seat of his vehicle. Jesus later identified Preston in a photo array as the person he observed in the driver's seat of his vehicle on the day of the incident. Jesus also identified Preston in court as the person who perpetrated the crimes against himself and his wife, Lesley. When asked how he could be certain it was Preston in the driver's seat of his vehicle, Jesus stated "because the day of the incident, I struggled with him. I saw him." (Tr. 459.)

{¶ 30} In addition, Evans confirmed that Preston's DNA matched DNA profiles obtained from the screwdriver, pry tool, and brick used during the commission of the crimes. Preston's DNA was also discovered on various items located inside the vehicle, including a disposable lighter, the steering wheel, the gear shift, and the interior driver's-side door handle. This evidence, introduced through expert testimony, was sufficient to identify Preston as the person who was in the driver's seat of Jesus's vehicle during the incident. Accordingly, we find the state presented sufficient evidence to satisfy the essential element of identity.

{¶ 31} We recognize that Preston contests the reliability of Jesus's identification and the TrueAllele technology. However, "'while identity is an element that must

14

> be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence.'" *Deal*, 8th Dist. Cuyahoga No. 92642, 2010-Ohio-153, at ¶ 11, 2010 WL 193570, quoting *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082, ¶ 48, 2008 WL 4966485. Thus, Preston's insinuation that the state's identification evidence was not reliable does not raise a proper argument regarding the sufficiency of the evidence supporting his convictions.

*Preston*, 2021 WL 2765175, at * 6-7.  In his habeas Petition and Traverse, Mr. Preston argues in the same manner as he did in his direct appeal that the evidence was insufficient to establish his identity as the perpetrator.  (*Compare* ECF Doc. 1, pp. 8-11, ECF Doc. 9, pp. 11-14 *with* ECF Doc. 8-1, pp. 75-79.)  He argues that: the descriptions of the suspects were vague; several witnesses testified he was not near the scene of the crime; the DNA evidence connecting him to the crime was unreliable; the pre-trial identification procedures did not comply with the statutory requirements; and Mr. Maldonado's identification of Petitioner as the perpetrator was problematic for multiple reasons other than the statutorily non-compliant procedures.  (*Id.*)

As the state court of appeals properly concluded, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson*, 200 F.3d at 992.  Additionally, although Mr. Preston argues the identification and DNA evidence was not reliable and therefore should not have been believed or relied upon to prove he was the perpetrator, it cannot be ignored that the jury considered the evidence presented at trial and reached the conclusion that he was the perpetrator.  Deference is due to the jury's determination, *Brown*, 567 F.3d at 205, since the jury considered the evidence and evaluated the testimony and credibility of all witnesses, including Mr. Maldonado and Ms. Evans.  Indeed, in determining the sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205.  "[I]t is the responsibility of the jury—

15

not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Coleman*, 566 U.S. at 651 (internal quotations and citations omitted).  As the Supreme Court has explained, "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."  *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).  Here, when viewing the evidence in the light most favorable to the prosecution, including Mr. Moldonado's testimony (ECF Doc. 8-2, pp. 423-521) and other evidence as detailed by the court of appeals, the undersigned concludes that Mr. Preston has failed to demonstrate that "no rational trier of fact could have agreed with the jury" that Mr. Preston was the perpetrator.  *Coleman*, 566 U.S. at 651.

Additionally, under the second layer of deference applied to federal habeas review of sufficiency claims under AEDPA, the question is not whether this Court finds the state court of appeals's determination incorrect, but rather "whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [Mr. Preston] guilty beyond a reasonable doubt based upon the evidence introduced at trial."  *Brown*, 567 F.3d at 205 (emphasis in original).  Mr. Preston "'must show that the state court's ruling on [his] [sufficiency] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102.

Mr. Preston has not argued that the court of appeals's determination regarding his identity arguments was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the

16

evidence presented.  He simply reiterates arguments previously presented to the court of appeals to support his claim that the evidence was insufficient to prove he was the perpetrator.  But the court of appeals considered those arguments and the evidence presented at trial and "conclude[d] that a rational jury could have determined, beyond a reasonable doubt, that Preston was the perpetrator of the crimes committed against Jesus and Lesley."  (ECF Doc. 8-1, pp. 107-08, ¶¶ 29-30.)  The court of appeals considered Mr. Preston's claim that the evidence that the prosecution relied on to prove his identity was insufficient because it was unreliable and/or not based on valid procedures, but concluded that was not a tenable sufficiency of the evidence argument.  (*Id*. at p. 108, ¶ 31.)  The undersigned agrees.  Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original).  And as the Supreme Court explained, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  Thus, because it was for the jury to weigh the evidence, Mr. Preston's attempt to argue that there was insufficient evidence to convict him because the evidence was unreliable or should have been weighed differently by the jury must fail.  Further, Mr. Preston has not shown that the court of appeals's determination in this regard was contrary to, or an unreasonable application of, clearly established federal law.

Having considered the state court of appeals's reasoned analysis of Mr. Preston's sufficiency of the evidence claim and given the record before the state court of appeals, the undersigned concludes that it cannot be said that the "'state court's ruling on [his] [sufficiency] claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby*,

565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).

> ii. **The Evidence was Sufficient Under *Jackson* to Prove the Necessary Elements of Murder, Aggravated Robbery, and Felonious Assault and the State Court's Adjudication of the Claim was Not Unreasonable**

After outlining the relevant sufficiency of the evidence standard, *Preston*, 2021 WL

2765175, at * 5, the court of appeals also addressed Mr. Preston's claim that there was

insufficient evidence to prove the necessary elements of murder, aggravated robbery, and

felonious assault as charged in Counts 2, 3, 4 and 6 and found it to be without merit, explaining:

> {¶ 33} As stated, Preston was convicted of felony murder in violation of R.C. 2903.02(B). The statute states, in relevant part, that "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree * * *." In this case, Count 3 of the indictment alleged that the felony offense underlying the felony murder charge was aggravated robbery and/or felonious assault.

> {¶ 34} In turn, Preston was also convicted of two counts of aggravated robbery in violation of R.C. 2911.01(A)(3). Count 2 of the indictment pertained to the conduct committed against Lesley, while Count 6 of the indictment pertained to conduct committed against Jesus. The statute provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another." A "theft offense," pursuant to R.C. 2913.01(K), includes violations of R.C. 2911.02, robbery, and R.C. 2913.02, theft. Theft requires the state to prove beyond a reasonable doubt that Preston, with the purpose to deprive the owner of property, knowingly obtained control over the property without the consent of the owner or through deception, threat, or intimidation. R.C. 2913.02. A person acts with a particular purpose when "it is [her] specific intention to cause a certain result." R.C. 2901.22(A).

> {¶ 35} Lastly, Preston was convicted of felonious assault in violation of R.C. 2903.11(A)(1). A person commits felonious assault when one "knowingly" causes "serious physical harm to another or to another's unborn." R.C. 2903.11(A)(1). Count 4 of the indictment alleged that Preston did knowingly cause serious physical harm to Lesley.

> {¶ 36} To have acted "knowingly," a person need not have specifically intended to cause a particular result. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or

18

will probably be of a certain nature." R.C. 2901.22(B). In other words, a defendant acts knowingly when, although not necessarily intending a particular result, he or she is aware that the result will probably occur.

{¶ 37} If a result is a probable consequence of a voluntary act, the actor "'will be held to have acted knowingly to achieve it'" because a person "'is charged by the law with knowledge of the reasonable and probable consequences of his [or her] own acts.'" *State v. Dixon*, 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 16, 2004 WL 1067527, quoting *State v. McDaniel*, 2d Dist. Montgomery No. 16221, 1998 WL 214606, 7, 1998 Ohio App. LEXIS 2039, 16 (May 1, 1998); *see also State v. McCurdy*, 10th Dist. Franklin No. 13AP-321, 2013-Ohio-5710, ¶ 16, 2013 WL 6843623 (" '[F]elonious assault under R.C. 2903.11, combined with the definition of "knowingly" found in R.C. 2901.22(B), does not require that a defendant intended to cause "serious physical harm," but rather, that the defendant acted with an awareness that the conduct probably would cause such harm.' ") (emphasis deleted), quoting *State v. Smith*, 10th Dist. Franklin No. 04Ap-726, 2005-Ohio-1765, ¶ 28. "Stated another way, when a defendant voluntarily acts in a manner that is likely to cause serious physical injury, the factfinder can infer that the defendant was aware that his actions would cause whatever injury results from his actions, or, in other words, that he acted knowingly." *State v. Reed*, 8th Dist. Cuyahoga No. 89137, 2008-Ohio-312, ¶ 10, 2008 WL 250598. "'To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct.'" *State v. Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, ¶ 13, 2016 WL 4242219, quoting *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 29, 2007 WL 1165822. The defendant need not have known that his or her actions would cause the precise injury sustained by the victim. *See, e.g., State v. Perez*, 8th Dist. Cuyahoga No. 91227, 2009-Ohio-959, ¶ 42, 2009 WL 548143. Absent an admission, whether a defendant acted "knowingly" must be determined "from all the surrounding facts and circumstances, including the doing of the act itself." *Dixon* at ¶ 16, quoting *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

{¶ 38} "Serious physical harm," as defined in R.C. 2901.01(A)(5), is very broad and includes any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

> (b) Any physical harm that carries a substantial risk of death;

> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Loss of consciousness, "'irrespective of its duration,'" has been found to constitute severe physical harm under R.C. 2901.01(A)(5)(c). *State v. Watson*, 10th Dist. Franklin No. 17AP-834, 2018-Ohio-4964, ¶ 11, 2018 WL 6505533, quoting *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19, 2011 WL 2041114.

{¶ 39} On appeal, Preston asserts that although this was a "tragic incident," the "facts do not reflect that [he] knowingly * * * tried to injure Lesley or Jesus." We disagree. As previously discussed, the testimony and forensic evidence introduced at trial demonstrated that Preston was the individual attempting to start Jesus's family vehicle with a screwdriver at the time he was confronted by Jesus and Lesley in a church parking lot. Preston did not have permission to obtain control of the victims' family vehicle, and there is no dispute that he entered the vehicle with the intent to deprive the owners of their property. While attempting to flee from the scene of his theft, Preston engaged in conduct that resulted in Jesus and Lesley suffering serious physical harm. The testimony reflects that Preston placed the vehicle in reverse and drove backwards at a high rate of speed. Jesus was dragged by the vehicle for approximately 30 feet, resulting in injuries to his hands, legs, and feet. Photographs of the injuries, marked state's exhibit Nos. 146-154, reveal that Jesus sustained significant cuts to his hands, legs, and feet. Jesus received medical treatment from emergency personnel and was required to see a specialist for his leg injuries.

{¶ 40} Similarly, the record reflects that Lesley was dragged under the vehicle, causing her to fall to the ground. Thereafter, Preston put the vehicle in drive, turned the vehicle in the direction where Lesley was located, and "drove over" Lesley's body as she lay unconscious on the pavement. (Tr. 428-433.) Jesus explained that Preston had room to exit the parking lot without striking his wife. As a proximate result of Preston's conduct, Lesley died from blunt force trauma within "seconds." A reasonable juror could conclude that Lesley's serious physical harm and eventual death was a result within the natural and logical scope of risk created by the conduct of Preston. (Tr. 1003.)

{¶ 41} Viewing the foregoing evidence in a light most favorable to the state, we find any rational trier of fact could have found the essential elements of felony murder, aggravated robbery, and felonious assault proven beyond a reasonable doubt. Preston's convictions are supported by sufficient evidence.

*Preston*, 2021 WL 2765175, at * 7-9.  In his habeas Petition and Traverse, Mr. Preston argues in the same manner as he did in his direct appeal that there was insufficient evidence to prove the elements of the offenses, asserting that while the incident was "admittedly tragic," it "was not

20

Murder, Aggravated Robbery, or Felonious Assault, and the facts do not reflect" that he "knowingly or intentionally tried to injure DeJesus or Maldonado." (*Compare* ECF Doc. 1, p. 11, ECF Doc. 9, p. 14 *with* ECF Doc. 8-1, pp. 79-80.)   While Mr. Preston contends that the evidence does not establish that he knowingly inflicted or attempted to inflict injury as was required to convict him of murder, aggravated robbery, and felonious assault, the jury considered the evidence presented at trial and concluded otherwise.  Deference is due to that determination. *Brown*, 567 F.3d at 205.  Again, a court determining the sufficiency of the evidence does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.*  "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Coleman*, 566 U.S. at 651 (internal quotations and citations omitted).  Here, when viewing the evidence in the light most favorable to the prosecution, including the evidence as detailed by the court of appeals, the undersigned concludes that Mr. Preston has failed to demonstrate that "no rational trier of fact could have agreed with the jury" that Mr. Preston acted knowingly when he injured the victims in this case. *Coleman*, 566 U.S. at 651.

Additionally, under the second layer of deference applied to federal habeas review of sufficiency claims under AEDPA, the question is not whether this Court finds the state court appeals's determination incorrect, but rather "whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [Mr. Preston] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Brown*, 567 F.3d at 205 (emphasis in original).  Mr. Preston "'must show that the state court's ruling on [his] [sufficiency] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby*,

565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102.

Mr. Preston has not argued that the court of appeals's determination was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented.  He simply reiterates arguments previously presented to the court of appeals to support his claim that the evidence was insufficient to prove he knowingly injured or attempted to injure the victims.  But the court of appeals considered those arguments and the evidence presented at trial and concluded that "[v]iewing the . . . evidence in a light most favorable to the state, . . . any rational trier of fact could have found the essential elements of felony murder, aggravated robbery, and felonious assault proven beyond a reasonable doubt."  *Preston*, 2021 WL 2765175, at * 9. Having considered the state court of appeals's well-reasoned analysis of Mr. Preston's sufficiency of the evidence claim and given the record before the state court of appeals, the undersigned concludes that it cannot be said that the "'state court's ruling on [his] [sufficiency] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).

For the reasons set forth above, and viewing the evidence in the light most favorable to the prosecution as set forth in *Jackson*, the undersigned concludes that Mr. Preston has failed to show that "no rational trier of fact could have agreed with the jury."  *Coleman*, 566 U.S. at 651. Additionally, even if this Court were to find that "no rational trier of fact could have agreed with the jury," habeas relief is not warranted because the undersigned further concludes that the state

22

court's decision was not "objectively unreasonable." *Id.*   Accordingly, the undersigned recommends that the Court **DENY** Ground One.

## C.     Ground Two and Ground Three

Petitioner raises evidentiary challenges in Grounds Two and Three of the Petition.  (ECF Doc. 1, pp. 13-18.)  In Ground Two, he argues he was denied his due process right to a fair trial because the trial court violated state evidence rules and the state and federal constitutions when it allowed the admission of gruesome autopsy photographs.  (*Id*. at pp. 13-15.)  In Ground Three, he argues the trial court violated his due process right to a fair trial when it allowed a prosecution witness to comment on the credibility of a pre-trial identification process.  (*Id*. at pp. 15-18.)  Respondent argues that Mr. Preston has failed to show that the alleged erroneous evidentiary rulings denied him fundamentally fair trial or that the state court's decision overruling his evidentiary challenges was contrary to, or involved an unreasonable application of, clearly established federal law.  (ECF Doc. 8, pp. 13-19.)  Thus, Respondent argues that Mr. Preston is not entitled to habeas relief on his second or third ground for relief.  (*Id*.)  The undersigned will address each ground for relief in turn.

### 1.     Federal Habeas Relief Based on State Law Evidentiary Rulings

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Issac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022), *cert. denied,* 143 S. Ct. 993 (2023) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)); *see also Small v. Brigano,* No. 04-3328, 134 F. App'x 931, 936 (6th Cir. 2005) (indicating that habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings).  Thus, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012).

It is only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (bracket in original)).

## 2.    Claim in Ground Two is Non-Cognizable and Without Merit

The court of appeals considered Mr. Preston's assignment of error alleging that the trial court erred in admitting certain autopsy photographs over the defense's objection and found the assignment of error to be without merit, explaining:

> {¶ 57} In his fourth assignment of error, Preston argues the trial court erred by admitting certain autopsy photographs over defense counsel's objections. Preston

contends the photographs were "grossly inflammatory" and were "were not relevant or probative of any fact in issue."

{¶ 58} "The prosecution is entitled to present evidence showing the cause of death, even if the cause is uncontested, to give the jury an 'appreciation of the nature and circumstances of the crimes.'" *State v. Catron*, 8th Dist. Cuyahoga No. 101789, 2015-Ohio-2697, ¶ 25, 2015 WL 4043004 quoting *State v. Chatmon*, 8th Dist. Cuyahoga No. 99508, 2013-Ohio-5245, ¶ 41. Moreover, the state has latitude in constructing its case and determining the manner by which it meets its burden of proof. *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 99, 103 ("[T]he state bears the burden of proof and it has no obligation to meet that burden in the least gruesome way."); *see also State v. Kirkland*, Slip Opinion No. 2020-Ohio-4079, 160 Ohio St.3d 389, 157 N.E.3d 716, quoting *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984) ("'[T]he mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible.'").

{¶ 59} Thus, "[a]utopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 142, 2016 WL 3223905, citing *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 52. Consequently, autopsy photographs — even if gruesome — are not per se inadmissible. *Maurer* at 265, 473 N.E.2d 768.

{¶ 60} The admissibility of gruesome photographs in a noncapital case is considered with reference to Evid.R. 403. *See, Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, at ¶ 95-96, quoting *State v. Morales,* 32 Ohio St.3d 252, 257-258, 513 N.E.2d 267 (1987). Under Evid.R. 403(A), otherwise relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion, and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, Slip Opinion No. 2020-Ohio-6699, ¶ 19, 2020 WL 7391580, citing *U.S. v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 372, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) (Frankfurter, J., dissenting). Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 61} In this case, the disputed autopsy photographs, marked state's exhibit Nos. 195 and 196, are of Lesley's liver and kidney. The photographs show that Lesley's internal organs sustained extensive lacerations as a result of the pressure caused by the weight of the vehicle. Preston opposed the admission of the photographs at trial, arguing they were "grossly inflammatory" and "unfairly prejudicial under Evidence Rule 403." (Tr. 602-606.) The trial court disagreed, stating:

> I [do] find that the photographs are necessary to help the jury understand the medical examiner's testimony, and they're offered based upon the State's position that these photos are offered to prove elements of the offenses that they are required to, and that they have the burden of proving.

> So I do find that the photographs are necessary, and that the probative value of the photos is not outweighed by the danger of unfair prejudice, so I am going to allow them, and they are only these two photos, so they are not cumulative or repetitive, so I will find that the photos are admissible.

(Tr. 932.)

{¶ 62} After careful review, we are unable to conclude that the trial court abused its discretion by permitting the state to introduce the disputed autopsy photographs. At trial, Dr. Galita testified that Lesley's cause of death was blunt force injuries that included significant visceral injuries. In fact, Dr. Galita testified that the injuries caused to Lesley's liver, standing alone, would have been fatal. (Tr. 1002.) The photographs were probative and showed the full extent of Lesley's blunt force injuries. Each photograph identified a specific injury and were not prejudicially duplicative or cumulative in nature.

{¶ 63} Preston's fourth assignment of error is overruled.

*Preston*, 2021 WL 2765175, at * 11-12

As noted above, federal courts are limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67-68; s*ee also Lewis*, 497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21. Accordingly, to the extent that Mr. Preston seeks federal habeas relief on the basis that the trial court erred in admitting the autopsy photographs under state evidentiary rules, the undersigned recommends that the Court **DISMISS** Ground Two as not cognizable on federal habeas review.

As it relates to Mr. Preston's claim that his due process rights were violated as a result of the admission of the disputed autopsy photographs, Mr. Preston has not shown that admission of

the autopsy photographs was "so egregious that it result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512.  "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (citing *Wright*, 999 F.2d at 178 (quoting *Dowling*, 493 U.S. at 352)).  Specific to Mr. Preston's second ground for relief, the Sixth Circuit has repeatedly found requests for federal habeas relief based on claims that a trial court erred in allowing the admission of gruesome photographs of a victim's body to be without merit.  *See e.g. Jackson v. Douglas*, No. 23-1801, 2024 WL 862440, at *3 (6th Cir. Feb. 26, 2024) (finding that "[r]easonable jurists could not disagree that [petitioner] failed to show that admission of the photographs rendered his trial fundamentally unfair") (citing and relying on *Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012) (finding that a challenge to the admission of 18 victim autopsy photographs did not satisfy the "high standard" for habeas relief); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (denying habeas relief on claim challenging the admission of photographs depicting victim's corpse where the photographs were relevant to issue of intent and the trial court made an effort to limit any prejudicial effect)).

Here, in finding the trial court did not err in admitting the disputed photographs, the state court of appeals explained that "[t]he photographs were probative and showed the full extent of [the] blunt force injuries," as testified to by the medical examiner.  *Preston*, 2021 WL 2765175, at * 12.  Further, the state court of appeals found that "[e]ach photograph identified a specific injury and were not prejudicially duplicative or cumulative in nature."  *Id.*  Thus, the state court evaluated both the relevancy of the photographs and the nature and extent of the photographs before concluding that the trial court did not abuse its discretion in admitting the photographs.

Considering the foregoing, the undersigned concludes that Mr. Preston has not shown that he was denied a fundamentally fair trial as a result of the admission of the disputed

photographs.  Further, he has not shown that the state court's adjudication of his challenge to the admission of the autopsy photographs under Ohio Evid. R. 403 "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Given the record and the high deference afforded a state court's adjudication of a claim on the merits, the undersigned cannot conclude that the state court's determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  Accordingly, the undersigned recommends that the Court **DENY** the due process claim raised in Ground Two.

### 3.    Claim in Ground Three is Non-Cognizable and Without Merit

The court of appeals considered Mr. Preston's assignment of error alleging that the trial court erred in allowing a detective's testimony regarding the pre-trial identification process to stand and found the assignment of error to be without merit, explaining:

{¶ 64} In his fifth assignment of error, Preston argues he was deprived a fair trial and due process when Det. Vowell improperly commented on the credibility of the pretrial identification. [FN 1]

[FN 1 - In his appellate brief, Preston continuously refers to Det. Echols. However, because Preston cites to the testimony of Det. Vowell in the transcript, we interpret his argument as a claim that Det. Vowell improperly commented on the credibility of the pretrial identification.]

{¶ 65} "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988). Opinion testimony regarding another witness's credibility "infringe[s] upon the role

28

of the fact finder, who is charged with making determinations of veracity and credibility." *Id.* Thus, "the opinion of a witness as to whether another witness is being truthful is inadmissible." *State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 38, 2003 WL 1355230, citing *State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 WL 62793, 2001 Ohio App. LEXIS 230 (Jan. 26, 2001). *See also State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 113, 2014 WL 2167887, citing *State v. Kovac*, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 32 (2d Dist.) (noting that "lay witnesses are prohibited from testifying as to another witness's veracity"). When such testimony is admitted, it is subject to a harmless error analysis on review. *State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, ¶ 61-62, 2013 WL 3808173; *State v. Bush*, 10th Dist. Franklin No. 90AP-1190, 1991 WL 224231, 1991 Ohio App. LEXIS 4746 (Oct. 3, 1991). Under harmless error analysis, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

{¶ 66} During the cross-examination of Det. Vowell, defense counsel questioned Det. Vowell extensively about his decision to seriously pursue a case against Preston while simultaneously discounting Jesus's identification of a second individual, A.B. On appeal, Preston's position that Det. Vowell improperly commented on the credibility of Jesus's identification relies on the following line of questions posed during the cross-examination:

DEFENSE COUNSEL: Have you ever gone out and interviewed [A.B.]?

DET. VOWELL: No.

DEFENSE COUNSEL: Has anybody in the Homicide Unit –

DET. VOWELL: Not that I know of.

DEFENSE COUNSEL: Let me finish the question. Any police officer anywhere go out and interview [A.B.]?

DET. VOWELL: Not that I know of.

DEFENSE COUNSEL: So you're just discounting a witness' eyewitness identification of [A.B.] as being involved, you're discounting that; aren't you?

DET. VOWELL: No.

DEFENSE COUNSEL: Then why didn't you go out and interview [A.B.]?

DET. VOWELL: We are still checking everything out to make sure that -- we were not sure [A.B.] was in there. If I remember right, I said he thinks that's the guy. I think that's what he said. He said that's the passenger.

DEFENSE COUNSEL: The jury will have the video here, and they've already seen what the reaction of Jesus Cruz was when he was having that photo spread shown to him. So the video kind of speaks for itself as to his certainty, but you had no problem believing that Michael Preston was picked out by him; correct?

DET. VOWELL: Correct.

DEFENSE COUNSEL: You believed that was a valid pick of Michael Preston, don't you?

DET. VOWELL: Yes, because we knew him as –

DEFENSE COUNSEL: That it wasn't suggestive or anything like that, correct?

DET. VOWELL: Correct.

(Tr. 1185-1186.)

{¶ 67} Having reviewed Det. Vowell's testimony in its entirety, we find no error in the admission of the foregoing testimony. From this exchange, it is evident that defense counsel was attempting to discredit the breadth of Det. Vowell's investigation based on his failure to adequately consider A.B. as a suspect. The line of questioning was not intended to induce a response concerning the veracity of Jesus's identification. Det. Vowell's response to the posed question attempted to explain the factors that caused the investigating detectives to obtain a warrant for Preston's arrest. Det. Vowell did not specifically offer an opinion as to Jesus's truthfulness. Rather, Det. Vowell stated that he believed the identification was "valid" based on the procedure implemented by Det. Echols and warranted further action in light of the corroborating information that was provided to the detectives during the course of their investigation.

{¶ 68} Moreover, even if this court were to interpret Det. Vowell's testimony as being improper, we are unable to conclude that Det. Vowell's response to a direct question posed by defense counsel affected a substantial right of the accused. As discussed, the record contains ample forensic evidence and eyewitness testimony placing Preston in the driver's seat of the vehicle that ran over the body of Lesley as she laid unconscious on the ground. And, beyond Det. Vowell's brief reference to the validity of the photo array procedure, the jury was presented with extensive evidence from which it could properly assess the reliability of Jesus's identification. Ultimately, the jury found Jesus's identification to be credible despite Preston's challenges to Det. Echols's compliance with the procedural requirements of R.C. 2933.83. We find Det. Vowell's response during his cross-examination was harmless error and did not change the outcome of the case. *See State v. Allen*, 8th Dist. Cuyahoga No. 92482, 2010-Ohio-9, ¶ 51, 2010 WL 27548 ("Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the

error is harmless and therefore will not be grounds for reversal.").

{¶ 69} Preston's fifth assignment of error is overruled.

*Preston*, 2021 WL 2765175, at * 12-14.

As noted above, federal courts are limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67-68; s*ee also Lewis*, 497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21. Accordingly, to the extent that Mr. Preston seeks federal habeas relief on the basis that the detective's testimony should not have been permitted under state evidentiary rules, the undersigned recommends that the Court **DISMISS** Ground Three as not cognizable on federal habeas review.

As it relates to his claim that his right to a fair trial and due process was violated as a result of the detective's testimony, Mr. Preston has not shown that allowing admission of the detective's testimony—testimony which was provided in response to questioning by defense counsel—was "so egregious" that it "result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. It is true that "prosecutors can commit improper bolstering during argument to the jury," and "the issue may also arise through the testimony they elicit from other government witnesses on direct examination." *United States v. Valdivia*, 680 F.3d 33, 48 (1st Cir. 2012) (citing *United States v. Rosario-Diaz*, 202 F.3d 54, 65 (1st Cir. 2000)). But here, the challenged testimony was offered in response to questioning by Mr. Preston's counsel during the detective's cross-examination, not through the prosecution's witness on direct examination. It is also noteworthy that there was no motion to strike the detective's testimony after the detective testified as he did. (ECF Doc. 8-2, p. 1194.) Additionally, the jury's weighing of the credibility of Mr. Maldonado's testimony and identification of Mr. Preston as the perpetrator was not based solely on the testimony from Detective Vowell. Mr. Maldonado testified and was subject to

cross-examination, and the jury was presented with evidence regarding the identification procedures used.   *Preston*, 2021 WL 2765175, at * 2-3, 9, 13, ¶¶ 10-32, 47, 68.  And the jury was instructed that they—the jurors—were "the sole judges of the facts, of the credibility of the witnesses, and of the weight to be given to the testimony of each witness."  (*Id*. at pp. 1426-27.)  On this record, it cannot be said that the admission of the detective's challenged testimony was "so egregious" that it "result[ed] in a denial of fundamental fairness."  *Bugh*, 329 F.3d at 512.

> Moreover, as the court of appeals found:

> Det. Vowell did not specifically offer an opinion as to Jesus's truthfulness. Rather, Det. Vowell stated that he believed the identification was "valid" based on the procedure implemented by Det. Echols and warranted further action in light of the corroborating information that was provided to the detectives during the course of their investigation.

*Preston*, 2021 WL 2765175, at * 13, ¶ 67.  Further, as the court of appeals explained, even if the court concluded that the detective's testimony was improper and should not have been admitted, the admission of that testimony did not affect a substantial right owed to Mr. Preston because:

> the record contains ample forensic evidence and eyewitness testimony placing Preston in the driver's seat of the vehicle that ran over the body of Lesley as she laid unconscious on the ground. And, beyond Det. Vowell's brief reference to the validity of the photo array procedure, the jury was presented with extensive evidence from which it could properly assess the reliability of Jesus's identification. Ultimately, the jury found Jesus's identification to be credible despite Preston's challenges to Det. Echols's compliance with the procedural requirements of R.C. 2933.83.

*Preston*, 2021 WL 2765175, at * 13, ¶ 68.  Thus, not only did the state court of appeals conclude that the testimony itself was not improper or inadmissible, but it also determined that admission of the testimony did not affect a substantial right owed to Mr. Preston.

Mr. Preston argues that the court of appeals incorrectly found the detective's opinion regarding Mr. Maldonado's identification did not affect his substantial rights.  (ECF Doc. 1, p.

18, ECF Doc. 9, p. 18.)  He asserts that the challenged testimony was in fact prejudicial and denied him his right to a fair trial and due process, explaining:

> The opinion the detective expressed regarding Maldonado's identification mattered here because Preston's identification as the perpetrator had been called into question by the defense[,] he had a supported alibi, multiple suspects had been identified, only to be rejected with no reason, Maldonado initially identified another man as the perpetrator, and the legitimacy of any DNA evidence was undermined by the fact that the sample recovered involved mixtures with multiple known and unknown contributors.

(*Id.*)   However, "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  To be entitled to habeas relief, Mr. Preston must demonstrate that the state court of appeals's "ruling on [his] claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  Mr. Preston has not met this high bar.  As discussed above, he has not shown that the admission of the detective's testimony—testimony provided in response to questioning by defense counsel—was "so egregious" that it "result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512.  Nor has he shown that the court of appeals's resolution of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

Mr. Preston cites to one U.S. Supreme Court decision in support of Ground Three, *Smith v. Phillips*, 455 U.S. 209, 219 (1982), which he cites for the proposition that the "touchstone of

Due Process analysis is the fairness of the trial, not the culpability of the prosecutor."  (ECF Doc. 1, p. 18, ECF Doc. 9, p. 18.)  Presumably his purpose in citing *Phillips* is to support a finding that the testimony he challenges in Ground Three may be found sufficient to render his trial fundamentally unfair, regardless of the fact that the testimony was elicited by his own attorney, and even though the prosecutor did not play any part in eliciting the testimony.  But even if *Phillips* could support such a finding, the burden nevertheless remains on Mr. Preston to show that the resulting testimony was so egregious that it denied him fundamental fairness.  For the reasons discussed above, he has failed to do so.[2]

Given the record and the high deference afforded a state court's adjudication of a claim on the merits, the undersigned cannot conclude that the state court of appeals' determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  Accordingly, the undersigned recommends that the Court **DENY** the due process claim raised in Ground Three.

---

[2] The undersigned also observes that Mr. Preston has not shown that the state court's findings in this case resulted in a decision that was contrary to, or based on an unreasonable application of, the Supreme Court's decision in *Phillips*. In *Phillips*, the Supreme Court held that a prosecutor's failure to disclose information regarding a juror's potential bias did not deprive the petitioner of a fair trial under the due process clause.  455 U.S. at 219-21.  There is nothing about the court of appeals decision in this case that is contrary to or an unreasonable application of that holding.

## IV.    Recommendation

For the reasons set forth herein, the undersigned recommends that the Court **DENY** Ground One of the Petition, **DISMISS** and/or **DENY** Ground Two of the Petition, and **DISMISS** and/or **DENY** Ground Three of the Petition.

November 12, 2025

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).